Wow, there you are. Okay, Mr. Yockelson, let's try again. Yes, good morning, your honors. Alan Yockelson on behalf of petitioner Douglas Bradford. I hope the court was able to hear all of what was probably the most brilliant oral argument I've ever heard. But I do want to thank the court for advancing this on the calendar and apologize to counsel who are waiting as the court was told my flight was delayed yesterday, which wouldn't allow me to get back to California in time and the hotel wants my room. So thank you for indulging me. This case, I understand the limits to the issue to which a certificate of appealability was granted limited to third party culpability and that the court may or may not expand that to address third party culpability with regard to Ms. Juarez. But I think- At least from my part, you can argue both of them because we did ask for briefing whether we're going to grant the certificate of appealability. Yes, thank you, your honor. And I am prepared to do both. But before I launch into that, I think it's really important to understand the background of this case, a 35 year old cold case of murder case that was first an attempted strangulation by a garrote and then a stabbing with what was apparently a weapon of opportunity. And yet there was not one shred of forensic evidence linking Mr. Bradford to that crime scene, to the decedent's apartment, a place where under prosecution's theory, Mr. Bradford was that night, which they never proved other than circumstantially and where he had been on many other occasions, one would have thought- What do you mean they never proved other than circumstantially? That he was at the scene that night. There was no forensic evidence to suggest that he was at the scene that night. You told them he was there. You told the investigators that he was there. Oh, no, I'm talking about Mr. Bradford. Oh, I see, okay. Mr. Bradford, no, Mr. Giarrusso, certainly if, I guess the point I was trying to make is that if you look at the entire background of the case, what you see is anytime evidence was favorable to the prosecution, whether it be the wire evidence or profiling evidence that came in under the guise of crime scene analysis, Judge Rappe was quick to point out that that went to wait, not admissibility, it was for the jury to decide. But when the evidence was favorable to the defense, such as the third-party culpability evidence, then it was a matter for the judge to rule on as a matter of law. And in this case, I felt a little bit like Charlie Brown to the court's Lucy because we had extensive argument on the admissibility of third-party culpability evidence, and especially with regard to Mr. Giarrusso. And at the end of the first round of argument in limine, the court challenged me because it's rare, but I was actually involved at the in limine stage of this case, along with Mr. Dennis Fisher, challenged me to bring to court a case that showed that a three-hour time difference between the murder and someone being at the crime scene was sufficient to under People v. Hall to admit such evidence. And so I went back and I did that and we filed supplemental briefs, and I found more than a dozen cases nationwide and through federal jurisdictions as well, and was briefed, it was argued. And at the end of the argument, Judge Rapace says, well, Mr. Yockelson, you didn't bring me a California case. Well, the football was taken, and there I was, Charlie Brown, because no, I'd not bring a California case, but I brought a dozen other cases that stood for the same proposition. Is your position, your position is not just because he was there three hours before. I mean, there is some other evidence. There's nothing specific, but as you say, there's more with regard to Mr. Bradford, but there's nothing direct. It's all circumstantial with regard to him as well. Exactly, exactly. Does that make a difference? One thing I've been wondering about is, does it make a difference with regard to the admission of third party culpability evidence, what the state of the evidence is with regard to the defendant comparative? I know there's at least one case that says, well, the Supreme Court said you can't do it the other way. You can't say, well, the prosecution's evidence is so strong that you can't let in the third party culpability evidence. What about if the prosecution's evidence against the defendant is of a certain kind as it is here? Does that affect whether the third party culpability evidence comes in? I think it must, Your Honor. I think we're looking at a continuum. As the court is referencing in Holmes, the issue was they had DNA evidence and the Supreme Court in Holmes for South Carolina said, you know, we don't care how strong the prosecution's evidence is. If it's not challenged and not conceded by the defense, then the defense has a due process right, a confrontation right to challenge that evidence. And here, I think that I know how deflated we were pre-trial because we thought that third party culpability evidence was everything in terms of defending this case. And that was entirely because this was a circumstantial case and the prosecution had a field day here with Mr. Bradford trying to go back and prove up a 35 year old alibi that he was out sailing that night. And it totally shifted the burden in this case. And as I noted earlier- The prosecution said something at the beginning. This doesn't seem to have been discussed, but the prosecution said something at the beginning of the case about how nobody was in the house that day. But that's not part of your argument here, as I understand. Oh, yes, it is, Your Honor. It's in the briefing and it's in the record that that's exactly what, not only did the court err in not admitting third party culpability evidence, but it gave the deputy district attorney license in opening and in closing argument to say not only that nobody was at the crime scene that night but Mr. Bradford, but it also gave them license to say that he specifically picked that evening because he knew she would be alone. That challenged- And that was totally untrue. Were those statements challenged at the time? I cannot tell you right now whether I know, because I was not present during trial. I was only engaged for pre-trial. And then I was retained for this federal habeas in between he had either Mr. Shapiro or other appointed counsel on his state appeal. So I don't know. I can't honestly say to the court right now whether that was objected to, but I do know that the motion in limine was raised, was re-raised at trial, and that it does appear in the appellate briefs in the state court- It was raised ad nauseum. I mean, if the question is whether it was preserved, it was addressed pre-trial. And then page after page of a huge transcript, that was covered and recovered. And the judge relied on his understanding of 352 as being ironclad. And based on his understanding, he excluded the evidence. Yes, Your Honor, you are absolutely right. Every time some new incident occurred at trial, whether it was opening statement, whether it was the coroner, Dr. Carpenter, who had passed away, and his assertion in his report that the time of death might have been, or that the digestion of the Chinese food might have occurred at a time that would have been inconsistent with Mr. Giarrusso's claim that he was leaving, that he had left the apartment, thereby narrowing that three hours even further. Every time a circumstance like that arose at trial, I know there was a motion renewed to admit, and in fact, I believe it was, they opened the door, was one of the comments of defense counsel to ask the court to reconsider its in limine ruling. This is exactly because you're running out of time soon. One is direct and harmless error, which seems to me to be very important. And the second is how it applies to this. Yes, Your Honor. I don't think under the circumstances of this case, this could be deemed harmless error. Again, as I noted, there was nothing to connect. What about the very firm and repeated alibi evidence from Mr. Giarrusso? Does that matter? Can that come in? Is that even relevant to us now or not? I don't believe so, Your Honor, because again, the question really is, what is a jury allowed to hear? What should the jury have heard? Well, I know, but if you thought that his girlfriend's alibi would come in and that she would say, as she said, both then and at the time of trial or close to it, that he was definitely there by midnight, and wouldn't that mean that in terms of harmlessness, not in terms of Brecht harmlessness, that it was unlikely to have made a difference? Or would it have? Can you even worry about that as you apply Brecht? I mean, it seems to me that there's a question about how much outside the record you could go because you don't really know what cross-examination would have shown about that alibi and if it were investigated, what would show up and so on. So do we take it into account even is what I'm asking you? I don't think so. And I think that we come back to homes where this is untested prosecution evidence because of the rulings that were made. And I don't know how you can get around the untested and non-conceded facts that the prosecution brought forward and determined that under those circumstances, Mr. Bradford had a fair trial in this case. Then finally, and because it's paid very little attention to in your brief, what do we do with the, with AEDPA and the 2254G1 standard or two standard? Which one applies and why is it not dispositive here? I believe this is an unreasonable application. I know that the state has pointed to a footnote in homes where they seem to indicate with favor people versus Hall is an instance where the state got the analysis right in Hall. And I would caution that we have seen divergences not in cases themselves, but in application of cases. And it calls to mind the death penalty case that I had in California where the main issue was that Wheeler and Batson versus Kentucky, which were all on all fours with each other back when they were decided, California had so diverted in Wheeler from the dictates and mandates of Batson that the US Supreme Court was forced to take California versus Johnson to put California back on the road. And I think what happens is that there's no problem with the Hall analysis if it is applied in a way that is consistent with homes, but it wasn't in this case. So it was an unreasonable application. All right. Well, your time is just about up. We'll give you a couple of minutes to rebuttal. Thank you. Thank you, your honor. Cooper. Good morning. I'm actually the court deputy attorney general, Mikhail Cooper for respondent appellee. Just to, I guess, start at the outset, the procedural posture of this case is important. The court cited ETA, and I think that's correct. We're not here to reweigh the trial court's evidentiary rulings under California law de novo. This case is governed by ETA, and it issues the state appellate court's decision, basically affirming the trial court's ruling. And the question is whether the state appellate court under active appeal correctly or incorrectly applied clearly established federal law. And it's clear here, the clearly established federal law is Holmes. Holmes said that you can't solely look to the strength of the prosecution case when excluding third-party defense evidence. And that's not what the state court did here. Holmes also approved of Hall,  But wait, when you say they approved of Hall, is that that big footnote where they just cited every case? Well, I don't think that's an approval of anything. It's just saying a lot of states, a lot of courts have done this. It doesn't say anything about whether the details of any opinion are correct. I don't think anybody's saying there's anything wrong with Hall, but I think saying there was an approval is a little much. All right. Well, in this case, the state court's applied Hall, which calls for examining the defense evidence, and seeing if there, in the defense evidence, if it just provides evidence of motive, evidence of opportunity, and saying that's enough. That's not enough to admit third-party culpability evidence. What is enough is actual, is if the third-party evidence points to the actual perpetration of the crime by the third party. And it's beyond dispute here. There's no direct link between Deiruzzo or Juarez to the actual perpetration of the crime. And so it's a very simple case. Yes, Your Honor. But counsel, what do we make of the fact that at least initially, Juarez was identified by an eyewitness? It doesn't, didn't that link him to the crime? No. Well, here's why. Because Juarez wasn't actually identified in the sense that, this is what happened. The witness saw a shadow of a man flee from behind, in the dark, from 70 feet distance, for a matter of seconds. When he was brought to Juarez, he was detained about a half a mile away, 20 minutes later, he couldn't identify him from the front. When Juarez was turned around, all that Valeri said that would be identifying a witness, all Valeri said of Juarez was, that looks like the guy, it possibly could have been the guy. And then also you take into effect that, so A, the circumstances of the ID were pretty weak. Counsel, didn't police use that identification to take Juarez into custody? Yes, and then they, he was never charged. And the reason is, because there was no evidence linking him to the actual perpetration of the crime. And he had no motive, he did not know the victim at all. Also years later in 2003, Valeri recanted that identification he made of Juarez. He said, then, I was eager to help police, because the victim was someone he knew and was close to. And that even though, you know, I went to the field show up. He did describe the person, and he described him quite consistently as having black, curly, afro-like hair. And for example, the California Court of Appeals says that the, that Garuso did not in any way match the neighbor's physical description, but neither did Bradford. And neither did Juarez. I'm sorry, what? No, well, he did say in 2010 that the person that he saw. Well, in 2010, but earlier, he was really clear several different times, as I understand it, that this person had curly black hair, which neither, Garuso, I don't, Garuso maybe did, I don't know, but Bradford definitely didn't. Well, Juarez had curly hair, but Juarez did not match Valeri's description. Vanessa, what I'm asking you, I'm saying that Bradford didn't match the description. I mean, that, I mean, what is now being said is the real usefulness of Juarez was to bring in the description and the fact that, that Bradford did not match that description. You say in your supplemental brief that something of that nature did come in. What exactly came in? Well, it came in shortly before Valeri was to testify. The defense was asked, okay, the defense asked basically use Valeri's identification of someone playing with black curly hair. They wanted to use that evidence to point to their client and say, our client did not have that hair. And they got that evidence in. In fact, they got more than that evidence in, and it had to be struck. They got in, they initially wanted to identify Juarez by his photograph. They wanted to name him. They were not allowed to do that. Nevertheless, you know, they kind of went beyond the scope of permitted questioning. And they got in more than just the fact that Valeri saw someone play with black curly hair. So in this case, it's not the case that they were denied that defense. They got that evidence in. It supported their alibi defense. It supported their ID defense. They were not denied that defense by excluding evidence of Flores or Giarrusso here. So I think that's important to know. Did they get in Valeri's statement that the person who left had black curly hair? The person he saw fleeing? He saw someone fleeing that had black curly hair. Now, I think later on in his testimony, he equivocates a bit. He says, you know, years on now, I can't be that sure any longer at this time, but that was my initial identification. And the defense was able to argue that. But the defense wasn't able to argue that some individual was identified by Valeri as meeting the description from the back from what he saw of the person fleeing. That was not allowed to come in, right? That was not allowed to come in because it did not meet the standards for admitting the person. The prosecutor said, as I said before, that nobody had been there that night, and that wasn't true. Did he also say something about nobody was, something that related to Juarez that also wasn't true? Like that no, what was that? I would push back against the first point. I think what he said that there's no evidence that someone, like someone else was there at the time that she was murdered. I know it's an objection made. No, I thought he said something like, he purposely chose this night because it was the one night she had nobody else in the house. Well, I think that's a reasonable instance from the record. I mean, Bradford was seen at the house a week or two before the murder. Somebody else was at the house. DeRusso was at the house. DeRusso was at the house for dinner, and then he left. At 11.50, as your honors pointed out earlier. But the statement was that she had nobody that, that was the one night nobody was coming to the house. Which isn't true. Again, that's, well, first off the issue before us is whether there was sufficient evidence to admit to third party evidence, not whether at the end of closing or at some other time the prosecutor misstated. Well, but it's pertinent to the importance of it, at least. That is that the prosecutor bothered to say that, suggests that it was, it mattered whether somebody was at the house. It would matter to the jury or he wouldn't have said it. Well, again, I, because I don't think counsel or I know that specific part of the record that the court is referencing because that's not the certified issue. All right, so what, the court of appeals, whether it's reasonable or not, first of all was wrong when he said, he said DeRusso did not in any way match the neighbor's physical description. A, I don't think that's true. I think DeRusso did have the curly hair, but I'm not sure, but neither did Bradford. So that doesn't seem pertinent at all. And then he, they go through a set of other circumstances and say, for example, that the fact that he once hit night while they dated was not admissible, even though it was admissible with regard to Bradford, that he'd had other physical interactions with this woman. Is that right? No, Your Honor. So here's why. First, your first point that you think the state of public court misstated that DeRusso didn't match. He didn't, DeRusso didn't match because he didn't fit the body. He was- No, that's not what they said. It did not in any way match, so that's wrong. Okay, well, the evidence that was before the trial court was that DeRusso did not have the body type that was seen by Brolieri fleeing the house. But we're reviewing the California Court of Appeals decision. That was their determination. And it's supported by the record before that, because it's not just the hair evidence, it's other evidence too. Because Brolieri gave a description of someone that was leaner than DeRusso, that someone was a bit taller than DeRusso. And eventually in 2010, he said this looked like Bradford. So that was, again, part of the evidence that the trial court was looking at. Number two, both in this court's case law and in the state court, in California case law, a history of violence between a third party and a victim is, without more, not sufficient to say that this third party is tied directly to the actual perpetration of the crime. I think that's reasonable in this case, because we don't really know what that incident was between DeRusso and the victim years before when they dated. We just have one mention of that in the record, and that's it. And there's absolutely nothing that ties that incident, whatever it may have been, to the actual brutal and horrific murder of Knight several years later. Council, on that point, what was the evidence that the state had against Mr. Bradford? Tell us the sum total of the evidence that was introduced against Mr. Bradford. Well, it was a lot of circumstantial evidence, but it was sufficient for the jury to convict. What was it, specifically? Specifically, what was the evidence? Okay, first off, there was a brutal and kind of butchered victim at the crime scene. Bradford had motive. But that's not, the fact that someone was murdered is not evidence of who murdered them. So tell us what the evidence was that connected Mr. Bradford to this brutal murder. Sure, so because the body was so butchered and it was a bloody crime scene, there was a crime scene analyst who opined that given the state of the body, this was a murder motivated by interpersonal conflict by preexisting interpersonal conflict and was meant to punish the victim. That's where the motive gets in because she had just broken up with him. And he had just shown up at her house the day after she did so and hurled a lamp at her and called her a whore. Not just, how long was it? How long was what? It wasn't just, it was several months, I think. She had broken up with him months before. And the day after she did that, he showed up at her house uninvited, found her with another man, threw a lamp at her, called her a whore and sped away. He was seen a week or two before the murder kind of lurking and stalking by the house. At the crime scene itself, there were two bits of evidence. One, he had given her a necklace, which was missing. And like no other personal item, it was that necklace that was missing. Crumpled in her trash can was the invitation for her sister's wedding. She was a maid of honor to that wedding. She planned on going with Bradford. Bradford had thought of Knight as the love of his life. She would have never crumpled and thrown away that wedding invitation. That wedding invitation was in the trash can. That is really unusual evidence. I mean, who knows what people crumple? I mean, she read the invitation. Maybe she didn't need it anymore. I mean, that just seems, I understand they had testimony that she wouldn't have done it, but it's very strange evidence. But it's not, that's not all, Your Honor. There's more. Here, we know that the petitioner, when he was broken up with in 2009 by his latest girlfriend, he displayed similar stalking behavior. He showed up unannounced. He would bicycle from miles away. He joked that he was stalking her. And also his alibi was ludicrous. I mean, that's the other thing that troubles me, though. So that evidence comes in against him. But with regard to Giarrusso, the fact that he was apparently violent with her earlier couldn't have come in, you're saying. Well, Giarrusso is, it's different evidence. It's different evidence, but it's still weighed under the 352 standard because even third-party evidence has to satisfy the more prejudicial than probative, or sorry, more probative than prejudicial standard. And so even if you could make the argument that some evidence of violence between Giarrusso and Knight years before was probative of the fact that he might have murdered, it was still highly prejudicial evidence. And there was nothing really probative in that evidence to tie him to the actual murder. But looking in isolation, but you also have to look at the fact that Giarrusso was the last person seen at the home other than the victim. So it's not just that isolated evidence, just like with Mr. Bradford, it would be a series of circumstantial evidence. And it's not just that one piece, it's also the piece that he was physically observed at her home shortly before she was murdered. Right, Your Honor. But the difference is the fact that it only gets, all the evidence against Giarrusso only gets you to, he had an opportunity. He also had, Giarrusso had a cut on his finger and there's something that says, well, that couldn't have been it because he was wearing gloves. Well, I mean, that seems to me to be exceedingly weak as well. I mean, people can get cut through gloves, one. Two, the only evidence that he was wearing gloves, that the murderer was wearing gloves was that there was a smear somewhere in the walls. Maybe that's accurate. Maybe he was wearing gloves for a while. I mean, it seems, all of it seems extremely forgiving with regard to him and extremely non-forgiving with regard to Bradford. That's really the dichotomy in this case, that everything comes in with regard to Bradford and nothing comes in with regard to Giarrusso. I disagree, Your Honor. Both sets of evidence are assessed under 352. There was nothing that was more prejudiced than what was admitted against Bradford. It's a cold case. So the evidence is- The fact that his mother, 40 years later, had some wires that didn't match at all anyway, and they were 40 years later. I don't know. Maybe there was some evidence as to the fact that she, was there any evidence that she had these pictures on the wall for 40 years? Well, it was the same. Well, they were able to match six of the eight braids of the wire. But did they know that this wire had been there 40 years before? They have any evidence that it was there 40 years before? That seems like very strange evidence. It's strange evidence, but it was sufficient for the jury to convict. And again, going back to EDSA, the question is whether this was clearly unreasonable under Holmes. And it's not a de novo reweighing of every single bit of evidence. That's not de novo. I mean, I was, you know, having been a trial judge, to me, this was very unusual to not let the jury sort all of this out. Generally, what happens is the prosecution puts on this evidence, defense, if they have alibi evidence, or third party evidence, they put that on it, and then the jury sorts it all out, rather than the judge saying, I'm going to allow the jury to hear this part, but I'm not going to allow the jury to hear that part. Judge Anton. Yeah, I agree with that. It's an extraordinary case based on my experience, the way the trial court handled it, and the way the prosecutor behaved. But the bottom line purpose for the rules like the California rule about third party culpability is to avoid the risk of harassment and confusion. And for the life of me, I don't understand how this evidence that you fought so hard to keep out would have caused any confusion or harassment. Can you shed any light on that? Well, I think the evidence is very weak. It's very speculative evidence, all told that either Girasu or Juarez actually perpetrated the crime. That's the standard the defendant needed to meet and could not with this evidence. On the other hand, had that evidence, speculative as it was, been admitted, then it lends itself to all sorts of speculation about, it's like we're going to have a mini trial on how did Juarez's hair look back to 1979, when there's actually no probative evidence tying him to the actual perpetration of the crime. The same is true of Girasu, as counsel mentioned, they had many, many chances to marshal evidence linking Girasu to the actual perpetration of the crime. They could proceed no farther than offering evidence that he was there earlier on the night. But why wasn't that just given to the jury? And the jury could decide whether or not the evidence by the defense raised a reasonable doubt rather than the judge deciding that it was impossible for the jury to consider this evidence or it was impermissible for the jury. That's the part that to me runs afoul of Holmes in that the defense was not given the opportunity to completely present its case. Well, your honor, Holmes doesn't allow the defense to put on any evidence that it wants to. It's not any evidence, it's evidence that was developed during the course of the investigation by the police. I would agree with you if this was some evidence that they had dreamed up, but this is evidence that was developed during the course of the investigation. And found insufficient to move forward on Girasu, his alibi checks out. Also found insufficient to move forward on Bradford for 35 years too. Yeah, but then the case was, it was, it came back from being a cold case and there was different bits of evidence later. One was the fact that he displayed the same behavior with his 2009 girlfriend, sorry, Seacat, who broke up with him in 2009. Well, it wasn't the same behavior. He didn't murder her or even attack her is my understanding. Well, he did stalk her. He did show up unannounced. All the sort of predicate behaviors that he displayed shortly before he murdered the victim's wife. Also his alibi is completely different. You are way over your time. And I would like to ask you the same question I asked your opposing counsel, which is, does it make any difference, should it make any difference in applying Holmes and Hall, the nature of the evidence against Bradford? Does it matter that we're dealing with a totally circumstantial case anyway? And does that mean that the room for the defense to produce a person as to whom there was at least some circumstantial evidence should be larger? I understand that Holmes said no in the opposite direction, but in this direction, does it matter? I would say that the weight of evidence against Bradford is probably best assessed in this case under the prejudice standard of Brett, right? There's overwhelming evidence inculpating him. I think the question before this court though is whether- Counsel? Yes. Do you think this evidence was overwhelming? It was sufficient for a jury to convict. And I think on the basis of it, yeah, I do. Granted, I admit that it's circumstantial evidence, but cold cases, this is kind of how the evidence looks. Well, I guess the really interesting question is if the jury had known that there was somebody in that house for four hours that night who was an ex-boyfriend and who had some history of violence and had a cut in his finger afterwards, could that have made a difference as to their determination that Bradford was guilty beyond a reasonable doubt? That's the basic issue. Is that right? I understand. It is, but not... Well, the basic issue is whether the state appellate court was unreasonably applying Holmes in determining that that evidence was insufficient. But in this case, the state appellate court was not clearly and unreasonably applying Holmes at all. For me, it's not even close. The evidence that Giroir was there earlier in that night and then he left has an alibi. That's solid evidence. He complied with the police investigation. Do you think that we consider the alibi at this point at this juncture? I think you consider the... Well, first off, under Hall, you consider the totality of the evidence that's implicating the third party. That's not evidence. I mean, there's no evidence of the alibi. There are some descriptions in interviews, but there's no evidence. That's incorrect, Your Honor. His alibi is supported by his then live-in girlfriend. She's 100% sure. She's not at the trial. There's no testimony at the trial. Well, that's because judges serve a safety... I know, so what I'm asking is, do we, in determining whether the defense should have been able to put this on, do we consider that there was an alibi evidence that might have weakened the case against Giarusso? Is that something we look at at this juncture now? Or that the trial court, or that the California Court of Appeals should have looked at? It didn't, by the way. It never mentioned that. Well, it didn't mention it doesn't mean it didn't look at it. It reviewed all the evidence against Giarusso because that was in the record before it. And it came to the conclusion after the trial court under state law of Hall that this evidence was clearly insufficient under the California Rules of Evidence. Your time is up. You're way over. So we will give Mr. Huckelson four minutes rather than two. Okay, because you were eight minutes over. Thank you. Thank you, your honors. You know, maybe this is an instance where the less I say, the more important the presentation because I don't like to point fingers, but Mr. Lewin, the deputy district attorney in this case has a history of bringing these cold cases. He has a contract with a dateline who had been in the courtroom from the in limine proceedings through the end of trial. And ironically enough, Judge Berzon brought up the wire. The episode of the dateline episode was called the wire in this case because it was grabbing headlines. Mr. Lewin likes headlines. Mr. Lewin loves to present third part or to present love triangle as motive for murder. But what I find most ironic is that I tried to imagine myself arguing this case representing Mr. Giarrusso who if the court references third volume of the excerpts of record page 468, a photograph shows him with dark curly hair to answer the question that counsel tried to sidestep by saying, well, his body didn't conform with Mr. Rollery's description. And something that has not been mentioned was that Mr. Rollery noticed Mr. Giarrusso's blue Volkswagen parked at the crime scene at 7.30, at 10.30 and saw it driving away at three o'clock. Now I see opposing counsel is shaking his head and I'm sure he's shaking his head because the trial judge was of the opinion that that was too common of a car to have any credibility and identification. But what you can't escape is that it was indeed the same car that was there from 7.30 till three o'clock in the morning seen by Mr. Rollery at a time that Mr. Giarrusso himself- Also, I mean, was there any evidence that it was a very common car? I was certainly around at the time. There were lots of beetles around, whether they were light blue, I don't know. Not a shred of evidence, Your Honor. I, again, I just feel this court has the pulse of this case. This court understands how uneven the case was tried, how difficult the court made this case and how contrary to the teachings of Holmes and Washington and Crane and all of the cases that have come before it that talk about a defendant's right to put on a defense. And he was so unduly and unfairly hampered that I just think a retrial is mandated in this case. So realistically, do you think this case would be tried again? You know, in normal circumstances, I would say no, but having dealt with Deputy District Attorney John Lewin for a year in pretrial, I don't think that man will ever let anything go. Which is an admirable characteristic in many ways, but in any event, thank you both. It's a very, very interesting case and you've been very helpful, so thank you. Bradford v. Paramo is submitted. Perez-Villardo v. Garland is next on the calendar. Oh, and for planning purposes, we'll take a brief break after the next case, after Sanchez-Papoca.
judges: BERZON, RAWLINSON, Antoon